# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L1 TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION,<br><br>Defendant. | Case No. 19-cv-2338-MMA (LL)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/TO AFFIRM AGENCY DECISION**<br><br>[Doc. No. 3] |

On December 6, 2019, L1 Technologies, Inc. ("Plaintiff") filed a Complaint "requesting an order to command" U.S. Customs and Border Protection ("Defendant" or "CBP") "to produce documents responsive to a subpoena and a demand for information" to be used in a pending state court civil action. *See* Doc. No. 1 at 2 ("Compl."). On February 13, 2020, Defendant filed a "Motion for Summary Judgment/to Affirm Agency Decision." *See* Doc. No. 3. Plaintiff filed an opposition to Defendant's motion, and Defendant replied. *See* Doc. Nos. 5, 7. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. Doc. No. 8. For the reasons set forth below, the Court **GRANTS** Defendant's motion.

## I. BACKGROUND

Plaintiff's request to compel Defendant to produce responsive documents to a subpoena and demand for information arises from a state court action between Plaintiff and Baruc Mayer ("Mayer"). Compl. ¶ 4.

In California Superior Court, Mayer brought suit against Plaintiff, alleging discrimination, retaliation, and failure to compensate for completed work. *Id.* ¶ 5; *see also* Falkoff Decl., Ex. 1, Doc. No. 3-1 at 6–32 (state court complaint).[1] As a defense in the state action, Plaintiff argues that Mayer resides in Mexico and was present in Mexico during the times Mayer alleges he worked for Plaintiff in the United States. Compl. ¶ 7. Plaintiff claims that Defendant's records contain evidence helpful to its defense in the state court action:

> [Plaintiff] therefore has strong reason to believe that [Defendant] has records that will show Mayer's entry and exit between the United States and Mexico, and that such records will be strong evidence in the State Court Litigation both as evidence pertaining to whether Mayer was actually working in the United States for [Plaintiff] on dates he has claimed, and as impeachment evidence. [Plaintiff] is informed and believes that the requested information may and likely will have a significant impact on the outcome of the State Court Litigation, making the need for [Plaintiff] to obtain this information substantial and significant.

*Id.* ¶ 9.

On May 20, 2019, Plaintiff served a "Deposition Subpoena for Production of Business Records" on Defendant. Falkoff Decl., Ex. 2, Doc. No. 3-1 at 34–39; *see also* Compl. ¶ 10. Plaintiff describes the records sought as follows:

> 1. All Writings (defined by Evidence Code section 250) relating to the entry into the United States from Mexico by Baruc Mayer, whose date of birth is

---

[1] Citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

2/20/1978 and California Driver's License Number D7565002 from 1/1/2016 through present date.

2. All writings (defined by Evidence Code section 250) relating to the exit from the United States from [sic] Mexico by Baruc Mayer, whose date of birth is 2/20/1978 and California Driver's License Number D7565002 from 1/1/2016 through present date.

3. Baruc Mayer also goes by the name "Baruc Nathan Mayer Morales" and have [sic] a Mexican Secretary of Defense Matricula Number: C-2390474.

Doc. No. 3-1 at 38; *see also* Compl. ¶ 13. On June 3, 2019, Plaintiff served a second subpoena on Defendant requesting the same type of materials but with greater specification relating to Mayer's entry into the United States through the San Ysidro and Otay Mesa Border Crossings. *See* Falkoff Decl., Ex. 3, Doc. No. 3-1 at 43; Compl. ¶ 10.

On June 6, 2019, Defendant responded to the first subpoena with a letter "declin[ing] to produce [the] requested records at this time." Falkoff Decl., Ex. 4, Doc. No. 3-1 at 48. In declining Plaintiff's request, Defendant based its decision on factors under its regulations "applicable to disclosure of information by CBP."[2] *See id.* at 48–49. On June 19, 2019, Defendant responded to both the first and second subpoenas with a letter declining to comply with both subpoenas. *See* Falkoff Decl., Ex. 5, Doc. No. 3-1 at 51–52. Defendant noted that state courts lack jurisdiction to enforce subpoenas against it and Plaintiff did not adhere with the necessary *Touhy* regulations. *See id.* at 51–52. Defendant declined to produce the requested documents and requested Plaintiff withdraw the subpoenas. *See id.*; Compl. ¶ 11.

In an email thread confirming a phone conversation that Plaintiff would withdraw the subpoena, Defendant stated that it would further consider Plaintiff's information request if it were submitted with a Privacy Act waiver, with the supporting information

---

[2] As explained *infra*, these regulations are colloquially referred to as "*Touhy* regulations" based on the Supreme Court's ruling in *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

required under the agency's regulations, and "with a significantly narrowed geographical and temporal scope." Falkoff Decl., Ex. 7, Doc. No. 3-1 at 56. On June 24, 2019, Plaintiff subsequently withdrew its June subpoena. *See* Falkoff Decl., Ex. 6, Doc. No. 3-1 at 54.

On October 25, 2019, Plaintiff served a third subpoena on Defendant. *See* Falkoff Decl., Ex. 8, Doc. No. 3-1 at 64; Compl. ¶ 12. Plaintiff describes the records sought as follows:

> 1. All Writings (defined by Evidence Code section 250) relating to the entry into the United States from Mexico by Baruc Mayer, whose date of birth is 2/20/1978 and California Driver's License Number D7565002 from 1/1/2016 through present date.
>
> 2. All writings (defined by Evidence Code section 250) relating to the exit from the United States to Mexico by Baruc Mayer, whose date of birth is 2/20/1978 and California Driver's License Number D7565002 from 1/1/2016 through present date.
>
> 3. Bruce Mayer also goes by the name "Baruc Nathan Mayer Morales" and has a Mexican Secretary of Defense Matricula Number: C-2390474.

Doc. No. 3-1 at 64; Compl. ¶ 12. Plaintiff attached the state court complaint and an affidavit from its attorney to the third subpoena. *See* Doc. No. 3-1 at 60–101. The subpoena required Defendant to produce the records by November 14, 2019. *See id.* at 62.

On December 6, 2019, Plaintiff filed this action. Plaintiff's action seeks judicial review under the Administrative Procedures Act ("APA") regarding Defendant's refusal to produce documents responsive to the October 25 subpoena and demand for information. *See* Compl. ¶ 3, 22, 25. Plaintiff requests that "[Defendant] be ordered to comply with the subpoena and demand for information as attached in **Exhibit 2** and that

the CBP produce its records relating to Mayer's exit and entry between the United States of America and Mexico from January 1, 2016 through to the present." *Id.* ¶ 25.[3]

In a declaration filed in support of its motion, agency counsel provides context for why Defendant did not respond to Plaintiff's third subpoena:

> L1 Technologies served its October 25, 2019 subpoena on the Office of General Counsel of the Department of Homeland Security in Washington DC rather than CBP. On December 3, 2019, DHS OGC forwarded this subpoena to CBP's Office of Chief Counsel in Washington DC, and it was then sent to CBP counsel's office in San Diego on that same date. Thus, CBP did not receive this third subpoena from L1 Technologies until 3 days prior to LI Technologies' filing the present lawsuit, which it did on December 6, 2019.

Falkoff Decl. ¶ 9, Doc. No. 3-1 at 2–3; *see also* Doc. No. 7 at 3 n.2.

## II. RELEVANT LAW

### A. Legal Standard

As a preliminary matter, the parties disagree on the applicable legal standard. Defendant moves to affirm its underlying agency decision pursuant to the standard governing *Touhy* regulations. *See* Doc. No. 3 at 7–11. In other words, Defendant requests the Court find that the underlying agency decision was neither arbitrary nor capricious under section 706(2)(A) of the APA. *See* 5 U.S.C. § 706(2)(A). However, Plaintiff applies the traditional standard for summary judgment and argues that Defendant has not met its burden to show no genuine dispute as to any material fact. *See* Doc. No. 5 at 3–4, 6. In reply, Defendant charges that Plaintiff applies the incorrect legal standard and places the burden of proof on the wrong party. Doc. No. 7 at 2.

---

[3] Plaintiff describes "Exhibit 2" as the third subpoena issued on October 25. *See* Compl. ¶ 12. However, Plaintiff has failed to attach any of its two referenced exhibits to its Complaint.

Despite Defendant's motion being brought as a "Motion for Summary Judgment/to Affirm Agency Decision," the Court does not apply the Federal Rule of Civil Procedure 56 standard to review an administrative agency's final decision under the APA. *See Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985); *see also Tolowa Nation v. United States*, 380 F. Supp. 3d 959, 962 (N.D. Cal. 2019); *Benhoff v. United States Deptt of Justice*, No. 16-cv-1095-GPC (JLB), 2017 WL 840879, at *4 (S.D. Cal. Mar. 3, 2017) ("[T]he standard on summary judgment in a standard civil case is different than reviewing an agency decision in an APA case."); *SLPR, LLC v. U.S. Army Corps of Engineers*, No. 6-cv-1327-MMA (POR), 2011 WL 940509, at *3 n.2 (S.D. Cal. Mar. 17, 2011). The Ninth Circuit has clearly differentiated summary judgment in a standard civil case from summary judgment as a means for a district court to review a final agency decision:

> [The District Court] is not required to resolve any facts in a review of an administrative proceeding. Certainly, there may be issues of fact before the administrative agency. However, the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did. *De novo* factfinding by the district court is allowed only in limited circumstances that have not arisen in the present case. The appellant confuses the use of summary judgment in an original district court proceeding with the use of summary judgment where, as here, the district court is reviewing a decision of an administrative agency which is itself the finder of fact. In the former case, summary judgment is appropriate only when the court finds there are no factual issues requiring resolution by trial. In the latter case, summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did.

*Occidental Eng'g Co.*, 753 F.2d at 769–70 (citations omitted). When reviewing an agency's decision, the district court sits as an appellate body "to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.* at 769. Accordingly, the district court is "limited to review of the

administrative record." *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988) (citing *Friends of the Earth v. Hintz*, 800 F.2d 822, 828 (9th Cir. 1986)). The district court does not focus on "some new record made initially in the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Animal Def. Council*, 840 F.2d at 1436 (quoting *Fla. Power & Light Co.*, 470 U.S. at 743–44).

Here, Plaintiff seeks judicial review under the APA of Defendant's refusal to produce documents responsive to a subpoena and demand for information. *See generally* Compl. Despite its clunky title, Defendant's motion requires the Court to review the agency's decision not to produce documents. Therefore, the Court applies the required legal standard under the APA and not the traditional Rule 56 standard.

**B. Standard of Review**

Pursuant to the APA, a court may set aside a final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The arbitrary and capricious standard is 'highly deferential, presuming the agency action to be valid and [requires] affirming the agency action if a reasonable basis exists for its decision.'" *Kern Cty. Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006) (quoting *Indep. Acceptance Co. v. California*, 204 F.3d 1247, 1251 (9th Cir. 2000)); *see also Mt. St. Helens Mining & Recovery Ltd. P'ship v. United States*, 384 F.3d 721, 728 (9th Cir. 2004) ("Applying the arbitrary and capricious standard, this court must determine whether the agency articulated a rational connection between the facts and the choice made."). Courts give additional deference to a final agency decision "when that agency is not a party to the dispute." *Akal Sec., Inc. v. U.S. Immigration & Customs Enf't*, No. 9-cv-2277-W (NLS), 2010 WL 2731649, at *4 (S.D. Cal. July 9, 2010) (quoting *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 278 (4th Cir. 1999)). The reviewing court's application of the standard is "narrow," and a court cannot supplant the

agency's judgment. *Mt. St. Helens Mining & Recovery Ltd. P'ship*, 384 F.3d at 728 (citing *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378 (1989)). To fulfill its obligations, the Court must conduct a "thorough, probing, in-depth review" of the administrative record. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415, (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). A reviewing court can overturn a final agency decision only if the agency demonstrated a "clear error of judgment." *Id.* (quoting *California Trout v. Schaefer*, 58 F.3d 469, 473 (9th Cir. 1995)).

> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

A court's review under the APA is "limited to review of the administrative record." *Animal Def. Council*, 840 F.2d 1436 (citing *Friends of the Earth*, 800 F.2d at 828). However, the record can be expanded "(1) if necessary to determine 'whether the agency has considered all relevant factors and has explained its decision,' (2) 'when the agency has relied on documents not in the record,' or (3) 'when supplementing the record is necessary to explain technical terms or complex subject matter.'" *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) (quoting *Inland Empire Pub. Lands Council v. Glickman*, 88 F.3d 697, 703–04 (9th Cir. 1996)).

**C. *Touhy* Regulations**

An agency head may "may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property

5 U.S.C. § 301. These regulations are referred to as *Touhy* regulations and have "the full force of law." *Swett v. Schenk*, 792 F.2d 1447, 1451 (9th Cir. 1986) (quoting *Ex parte Sackett*, 74 F.2d 922, 923 (9th Cir. 1935)); *see generally U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) (citing *Boske v. Comingore*, 177 U.S. 459 (1900)).

The Department of Homeland Security ("DHS") and CBP both have enacted *Touhy* regulations for when a party in a state civil suit seeks information from the agencies. *See* 6 C.F.R. § 5.41–5.49 (DHS's *Touhy* regulations); 19 C.F.R. § 103.21–103.27 (CBP's *Touhy* regulations). Both DHS and CBP bar employees from complying with a demand for agency information without approval from the respective agency's chief counsel. *See* 6 C.F.R. § 5.44; 19 C.F.R. § 103.22. Each agency provides the necessary procedures and requirements for subpoenas and demands for information. *See* 6 C.F.R. § 5.43–5.45; 19 C.F.R. § 103.22.

Determining whether to disclose information, each agency examines several general factors. *See* 6 C.F.R. § 5.48(a); 19 C.F.R. § 103.23(a). For example, the CPB considers the following factors:

> (1) Whether the disclosure would be appropriate under the relevant substantive law concerning privilege;
>
> (2) Whether the disclosure would be appropriate under the rules of procedure governing the case or matter in which the demand arose; and,
>
> (3) Whether the requesting party has demonstrated that the information requested is:
>
>> (i) Relevant and material to the action pending, based on copies of the summons and complaint that are required to be attached to the subpoena duces tecum or other demand;
>>
>> (ii) Genuinely necessary to the proceeding, i.e., a showing of substantial need has been made;
>>
>> (iii) Unavailable from other sources; and,

(iv) Reasonable in its scope, i.e., the documents, information, or testimony sought are described with particularity.

(4) Whether consultation with the originating component requires that the Chief Counsel make a separate determination as to the disclosure of the information requested.

19 C.F.R. § 103.23(a). Each agency also examines circumstances where disclosure will not be authorized. *See* 6 C.F.R. § 5.48(b); 19 C.F.R. § 103.23(b). The circumstances where disclosure will not be made include the following under the CBP regulations:

(1) Disclosure would violate a treaty, statute (such as the Privacy Act, 5 U.S.C. 552a, the Trade Secrets Act, 18 U.S.C. 1905, or the income tax laws, 26 U.S.C. 6103 and 7213), or a rule of procedure, such as the grand jury secrecy rule, Fed.R.Crim.Proc. rule 6(e) (18 U.S.C.App.);

(2) Disclosure would violate a specific regulation;

(3) Disclosure would reveal classified or confidential information;

(4) Disclosure would reveal a confidential source or informant;

(5) Disclosure would reveal investigatory records compiled for law enforcement purposes, interfere with enforcement proceedings, or disclose investigative techniques and procedures;

(6) Disclosure would improperly reveal confidential commercial information without the owner's consent (e.g., entry information);

(7) Disclosure relates to documents which were produced by another agency or entity;

(8) Disclosure would unduly interfere with the orderly conduct of CBP business;

(9) CBP has no interest, records, or other official information regarding the matter in which disclosure is sought;

> (10) There is a failure to make proper service upon the United States; or
>
> (11) There is a failure to comply with federal, state, or local rules of discovery.

19 C.F.R. § 103.23(b).

A party can challenge a final agency decision based on *Touhy* regulations through bringing a civil action in district court pursuant to the APA. *See Kwan Fai Mak v. F.B.I.*, 252 F.3d 1089, 1093 (9th Cir. 2001) (holding that actions taken pursuant to the Department of Justice's *Touhy* regulations were not "arbitrary, capricious, an abuse of discretion," or "in excess of statutory . . . authority" under 5 U.S.C. § 706(2).); *see also* 5 U.S.C. § 702 ("A person . . . adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."); *Akal Sec., Inc.*, 2010 WL 2731649, at *4 ("DHS's decision to prohibit its current and former employees from testifying pursuant to a state-court subpoena is exactly the kind of final agency action subject to review under the APA's arbitrary and capricious standard.").

### III. D<span></span>ISCUSSION

**A. Plaintiff's Objections**

As a preliminary matter, the Court addresses Plaintiff's "procedural and evidentiary objections" to Defendant's motion. Doc. No. 5-1 at 2–3.

**1. Objection 1: Defendant Has Not Provided a Separate Statement of Undisputed Facts**

Plaintiff objects generally because Defendant did not file a separate statement of undisputed material facts pursuant to the Court's Civil Chambers rules. *See* Doc. No. 5-1 at 2 (referring to J. Anello Civ. Chambers R. IV). Defendant argues that it is not necessary because the "motion is not a garden variety summary judgment motion but is instead a motion to affirm an agency decision under the APA." *See* Doc. No. 7 at 5 (footnote omitted).

As already discussed, the Court does not apply Federal Rule of Civil Procedure 56 when reviewing an administrative agency's final decision. *See supra* Section II.A. Although summary judgment may serve as a possible vehicle for a party seeking to affirm or dispute an agency's decision, *see, e.g., Occidental Eng'g Co.*, 753 F.2d at 770; *Tolowa Nation*, 380 F. Supp. 3d at 962, the APA's legal standard controls. In reviewing an APA action, a district court functions as an appellate court "to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co.*, 753 F.2d at 769. A separate statement of undisputed material facts is unnecessary when the Court functions as an appellate entity reviewing an administrative record. Accordingly, the Court **OVERRULES** Plaintiff's objection.

### 2. Objection 2: Defendant Has Not Filed an Answer or Supplied the Entire Administrative Record

Plaintiff objects to Defendant's motion as procedurally inappropriate because Defendant did not file an answer or the entire administrative record. *See* Doc. No. 5-1 at 2. Defendant argues that it was not required to file an answer, and that it filed its motion before the deadline to respond to Plaintiff's complaint. Doc. No. 7 at 7. Defendant notes that the motion to affirm the agency decision could have been brought either as a motion for summary judgment or a motion to dismiss. *Id.* Regarding the administrative record, Defendant states that it "submitted the administrative record for this Court's review" and "the administrative record upon which the agency acted in this case, and which the agency is asking this Court to review, is what CBP submitted—the underlying state court complaint, L1 Technologies' subpoenas, the responses by CBP attorneys, and the Falkoff declaration." Doc. No. 7 at 8.

As to the first dispute, Defendant filed its motion within the time required under Rule 12 to respond to Plaintiff's Complaint. *See* Doc. Nos. 3, 4. Defendant's response to Plaintiff's Complaint challenging an agency decision could have been brought as a motion for summary judgment or a motion to dismiss. *See, e.g., Occidental Eng'g Co.*,

753 F.2d at 770 (reviewing a district court's grant of summary judgment); *Tolowa Nation*, 380 F. Supp. 3d at 962 (ruling on parties' cross motions for summary judgment); *Debry v. Dep't of Homeland Sec.*, 688 F. Supp. 2d 1103, 1111 (S.D. Cal. 2009) (ruling on an agency's motion to dismiss or, in the alternative, motion for summary judgment). Either motion would have required the Court to conduct the same analysis under the APA. The Court finds that the form of motion is inconsequential.

As to the dispute over the administrative record, Defendant clearly states in its reply brief that it has produced the entire administrative record. *See* Doc. No. 7 at 8 ("Here, the administrative record upon which the agency acted in this case, and which the agency is asking this Court to review, is what CBP submitted . . . ."). The Court takes Defendant's representation as true. Moreover, discovery beyond the administrative record is inappropriate when a reviewing court decides whether an agency action was arbitrary or capricious. Again, the reviewing court functions as an appellate entity and is limited to the administrative record. *See Occidental Eng'g Co.*, 753 F.2d at 769. Traditional discovery is unnecessary and inappropriate because "there are no disputed facts that the district court must resolve." *Id.*

Accordingly, the Court **OVERRULES** Plaintiff's objection.

**3. Objections 3 and 4: Defendant's Declaration in Support of its Motion Should Be Stricken or Not Considered**

Plaintiff's final objections pertain to the Declaration of Stacy Falkoff in Support of Defendant's Motion—both as to the entire declaration and, specifically, paragraph nine. *See* Doc. No. 5-1 at 3 (referring to Doc. No. 3-1). Plaintiff argues that "in reviewing agency action the Court is limited to reviewing the entire administrative record and post-hoc rationalization in [a] declaration do[es] not constitute proper evidence in support of an agency decision." Doc. No. 5-1 at 3 (citing *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 419). Defendant responds that "the Court can and should consider the paragraph . . . explaining why CBP would continue to decline to produce the requested records." Doc. No. 7 at 8. It explains that "the reasons provided in the paragraph in the

13

19-cv-2338-MMA (LL)

Falkoff Declaration declining to produce the requested records were reasons provided in CBP's prior letters." *Id.* at 9. It further notes that the declaration—to the extent the declarant relied upon the Complaint—provides context as to why further information was needed with the earlier subpoenas: "It was only with its third subpoena that [Plaintiff] actually supplied the state court complaint, and attempted to provide some reasoning for why the requested records were genuinely necessary in the context of the underlying proceeding." *Id.*

As noted above, a court's review under the APA is "limited to review of the administrative record." *Animal Def. Council*, 840 F.2d 1436 (citing *Friends of the Earth*, 800 F.2d at 828). However, the Ninth Circuit has explained that a court may expand the record under certain circumstances: "(1) if necessary to determine 'whether the agency has considered all relevant factors and has explained its decision,' (2) 'when the agency has relied on documents not in the record,' or (3) 'when supplementing the record is necessary to explain technical terms or complex subject matter.'" *Sw. Ctr. for Biological Diversity*, 100 F.3d at 1450 (quoting *Inland Empire Pub. Lands Council*, 88 F.3d at 703–04). "Post-hoc rationalizations" are generally an inadequate basis for review and fall outside the "'whole record' complied by the agency" under 5 U.S.C. § 706's scope. *Citizens to Pres. Overton Park, Inc.*, 401 U.S. at 419.

Although Plaintiff brought suit before Defendant responded to the third subpoena, the Court remains constrained to its review of the administrative record. Defendant's declaration is primarily a means to attach exhibits constituting the administrative record. *See* Doc. No. 3-1 at 2. In the ninth paragraph, the declarant provides information regarding issues between DHS and CBP in delivering the third subpoena to the correct CBP official. *See id.* at 2–3. The ninth paragraph also provides the following information:

> Had CBP formally responded to this subpoena, *CBP would have* declined to produce the requested records, for essentially the same reasons as CBP had

14

previously given in its prior two letters. In particular, *CBP would have* cited the *Touhy* regulations that counsel the agency to conserve its and the U.S.'s resources for its federal mission, and to avoid partiality between private parties and the diversion of federal resources to purposes that are both private and not part of CBP's mission. This is particularly the case where complying with such requests would have much larger impacts if considered not just singly, but in the aggregate. In addition, CBP had requested that L1 Technologies obtain a Privacy Act waiver from the person whose personal records were at issue, Baruc Mayer; and that Ll Technologies reduce the temporal and geographic scope of its request. Ll Technologies did neither of those things. Finally, *having looked more closely at the state court complaint underlying this subpoena, it is apparent that* witnesses other than the state court plaintiff are identified as being present during the events specifically alleged in that complaint, and even witnesses apart from L1 Technologies'/the state court defendant's CEO. Thus, there would seem to be other avenues—such as witness testimony—to get at the information put at issue by the state court complaint itself. This too *would have* counselled against CBP providing the information requested by L1 Technologies in its third subpoena.

*Id.* at 3 (emphasis added).

The Court finds that this part of the declaration pertaining to how Defendant "would have" responded to Plaintiff's third subpoena is a post-hoc rationalization that falls outside of the administrative record. Therefore, it "may not be advanced as a new rationalization either for sustaining or attacking an agency's decision." *Sw. Ctr. for Biological Diversity*, 100 F.3d at 1450–51 (holding that a district court did not abuse its discretion in striking a letter that "constitute[d] post-decision information). The three exceptions articulated by the Ninth Circuit do not save Defendant. First, the proffered information as to how Defendant "would have" replied to the third subpoena is not necessary to determine whether Defendant considered the relevant factors because Defendant, in fact, was unable to determine the relevant factors in the first place as to the third subpoena. Second, it does not appear that Defendant has relied on documents not in the record. Third, there are no technical terms or complex subject matter that would allow for supplemental information.

15

Accordingly, the Court **SUSTAINS** in part and **OVERRULES** in part Plaintiff's objection to the Falkoff Declaration. In ruling on the instant motion, the Court will only examine the administrative record. Accordingly, the Court **SUSTAINS** Plaintiff's objection regarding paragraph nine of the declaration *only as to* the sentences after Defendant's explanation of the receipt of the subpoena from DHS. Plaintiff's objection is otherwise overruled.

**B. Whether There Is a "Final Agency Action"**

Although neither party addresses this point, the Court must assess as a threshold matter: whether there is a final agency action subject to review under the APA.

> "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."

5 U.S.C. § 704; *see also Mt. St. Helens Mining & Recovery Ltd. P'ship*, 384 F.3d at 727 ("It is well established that once an agency has taken final agency action under the APA, a reviewing court analyzes that decision under the 'arbitrary and capricious' standard of review."). The APA defines "agency action" as both action and refusal to act: "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Determining an agency action as final requires satisfaction of two conditions: (1) "the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature" and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78). In examining finality, courts "focus on the practical and legal effects of the agency action: 'The "finality element must be interpreted in a pragmatic and

16

19-cv-2338-MMA (LL)

flexible manner."'" *Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (quoting *Oregon Nat. Res. Council v. Harrell*, 52 F.3d 1499, 1503 (9th Cir. 1995)); *see also Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1318 (S.D. Cal. 2018).

In its motion, Defendant states "[its] decision in this case to decline production of the requested information pursuant to a state-court subpoena is exactly the kind of final agency action subject to review under the APA's arbitrary and capricious standard." Doc. No. 3 at 8. Although Plaintiff withdrew its second subpoena, *see* Doc. No. 3-1 at 54, it has not withdrawn the first or third subpoenas. Defendant's June 6 and June 19 letters, which declined to produce the records, do not pertain to the third subpoena. *See id.* at 48–49, 51–52.

The Court finds that there was a final agency action as to the first subpoena through Defendant's June 6 and 19 letters. The letters both clearly note Defendant declined to produce the sought records, *see* Doc. No. 3-1 at 48–49, 51–52, thus indicating the end of the agency's decision-making process and determination of Defendant's legal obligations. *See U.S. Army Corps of Engineers*, 136 S. Ct. at 1813 (quoting *Bennett*, 520 U.S. at 177–78); *see also Akal Sec., Inc.*, 2010 WL 2731649, at *4 ("DHS's decision to prohibit its current and former employees from testifying pursuant to a state-court subpoena is exactly the kind of final agency action subject to review under the APA's arbitrary and capricious standard").

It is less clear that there is a final action as to the third subpoena. Administrative issues between DHS and Defendant did not allow Defendant to respond to the subpoena in a timely manner and Plaintiff filed suit before Defendant could respond. *See* Doc. No. 3-1 at 2–3; *see also* Doc. No. 7 at 3 n.2. However, the first and third subpoenas ask for essentially the same information, *compare* Doc. No. 3-1 at 38, *with id.* at 64, and Defendant repeated in its June 6 and June 19 letters that it declines to produce the sought information from the first subpoena, *see id.* at 48–49, 51–52. Defendant's motion is clear that it still does not intend to produce information responsive to any of Plaintiff's issued

17

subpoenas. *See* Doc. No. 3 at 2, 13, 14, 15–16. This indicates that Defendant considers its decision as to the third subpoena as final. Moreover, Plaintiff appears to consider Defendant's failure to respond to the third subpoenas as final given it filed the present action. *See, e.g.*, Compl. ¶16 ("Despite L1's demand for documents fully complying with the applicable regulations, CBP has again refused and failed to produce any responsive information.").

Despite any uncertainty over the timing of the third subpoena's receipt and whether Plaintiff brought this action prematurely, the Court ultimately examines "the practical and legal effects of the agency action." *Oregon Nat. Desert Ass'n*, 465 F.3d at 982. Because Defendant treats its refusal to comply with the third subpoena as final—as demonstrated by its responses to the to the prior subpoenas and its present motion—and its decision determined its legal obligations, *see U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. at 1813 (quoting *Bennett*, 520 U.S. at 177–78), the Court finds that Defendant has rendered a final agency action under the APA.

**C. Whether Defendant's Decision Was "Arbitrary and Capricious" Under the APA**

Defendant argues that it considered the relevant *Touhy* factors and subsequently made a rational connection between the factors and its decision to decline to supply information to Plaintiff. *See* Doc. No. 3 at 12. In response, Plaintiff asserts that the documents provided in support of Defendant's motion do not "indicate who considered the requests, what information they considered, or whether they meaningfully considered the requests. Instead, the letters from the CBP denying the requests are loaded with boilerplate." Doc. No. 5 at 5.

As noted above, both DHS and CBP have established *Touhy* regulations that govern how the agencies respond to subpoenas arising from state court litigation. *See* 6 C.F.R. § 5.41–5.49; 19 C.F.R. § 103.21–103.27. The Court proceeds by determining whether Defendant articulated a rational connection between the facts, its established *Touhy* regulations, and its ultimate decision. *See Mt. St. Helens Mining & Recovery Ltd. P'ship*, 384 F.3d at 728.

In its response, Defendant stated that it would not be able to seek a protective order or shield sensitive information, *see* Doc. No. 3-1 at 49, which it connected to factors not authorizing disclosure when there is sensitive information, *see* 19 C.F.R. § 103.23(b)(3)–(6). Defendant noted that disclosure would be burdensome when examining similar requests in aggregate in the context "of all third-party demands served upon CBP," Doc. No. 3-1 at 49, which it connected to factors not authorizing disclosure where the request would interfere with CBP's work, *see, e.g.*, 19 C.F.R. § 103.23(b)(3)(8)–(9). Defendant questioned whether the sought information is "genuinely necessary" to the state action, *see* Doc. No. 3-1 at 49, which connects to a factor asking whether the requesting party demonstrated necessity and unavailability from other sources, *see* 19 C.F.R. § 103.23(a)(3)(ii)–(iii) ("i.e., a showing of substantial need"). Addressing the burdensome scope of the request "seek[ing] all inbound and outbound border crossing records for an individual for a 3.5 year period," Doc. No. 3-1 at 52, Defendant's reasoning connects to another factor where a request's scope is not reasonable, *see* 19 C.F.R. § 103.23(a)(3)(iv). Defendant also stated that the records are protected by the Privacy Act, Doc. No. 3-1 at 52 (referencing 5 U.S.C. § 552a), which connects to a factor not authorizing disclosure where disclosure would violate a statute, *see* C.F.R. § 103.23(b)(1) (explicitly listing 5 U.S.C. § 552a as an example). Finally, Defendant noted that it generally declines involvement in third party civil litigation because of its limited resources, *see* Doc. No. 3-1 at 52, and points to several DHS and CBP regulations not authorizing disclosure, *see, e.g.*, 19 C.F.R. § 103.23(b)(3)(8)–(9); *see also Benhoff*, 2017 WL 840879, at *5 ("Courts should defer to the agency on how to best use its resources as they are in the best position to determine how much time and effort would be involved considering its ability to comply.").

The Court finds that Defendant made reasonable connections in applying the *Touhy* regulations to the facts available when declining to furnish the information. Because the Court finds that there is a reasonable connection between the facts and final agency decision, the Court defers to the agency and presumes that the agency action is

19

19-cv-2338-MMA (LL)

valid. *See Kern Cty. Farm Bureau*, 450 F.3d at 1076; *Mt. St. Helens Mining & Recovery Ltd. P'ship*, 384 F.3d at 728. Moreover, the Court also keeps in mind the additional deference provided to Defendant's final actions where it is not a party in the underlying state court litigation. *See Akal Sec., Inc.*, 2010 WL 2731649, at *4 (quoting *COMSAT Corp.*, 190 F.3d at 278). Plaintiff does not overcome the presumption of validity. The Court cannot, and thus does not, supplant Defendant's judgment. *See Mt. St. Helens Mining & Recovery Ltd. P'ship*, 384 F.3d at 728 (citing *Marsh*, 490 U.S. at 378). In reviewing the agency's judgment, the Court does not find that Defendant committed a clear error of judgment.

Accordingly, the Court finds that Defendant's refusal to comply with Plaintiff's subpoenas and demands for information was neither arbitrary nor capricious. *See* 5 U.S.C. § 706(2)(A).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion and **AFFIRMS** Defendant's final agency action declining to comply with the subpoenas and demands for information issued by Plaintiff. The Court **INSTRUCTS** the Clerk of Court to enter judgment accordingly and to close the case.

**IT IS SO ORDERED**.

Dated: April 8, 2020

_____
HON. MICHAEL M. ANELLO
United States District Judge